IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEADERICK JONES, | ) |
|     Plaintiff, | ) |
| v. | ) No. 3:25-cv-00929 |
| METRO ACTION COMMISSION and METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY, | ) JUDGE RICHARDSON |
|     Defendants. | ) |

## MEMORANDUM OPINION & ORDER

Plaintiff Deaderick Jones, a resident of Tennessee, has filed a pro se Complaint against Defendant Metro Action Commission ("Defendant MAC")[1] and Defendant Metropolitan Government of Nashville and Davidson County ("Defendant Metro Government"), alleging violations of 42 U.S.C. § 1983, the 1st and 14th Amendments to the United States Constitution, and the Family and Medical Leave Act, as well as state law violations, related to Plaintiff's employment with Defendant MAC. (Doc. No. 1). Plaintiff further filed an Emergency Motion for Preliminary Injunction to Halt Ongoing Retaliation and Constitutional Violations (Doc. No. 6) and a Motion to Amend Plaintiff's Contact Information ("Motion to Amend") (Doc. No. 7).

On August 20, 2025, the Court entered an Order denying without prejudice Plaintiff's August 18, 2025 Emergency Motion (Doc. No. 6) and Plaintiff's Motion to Amend (Doc. No. 7) because both submissions lacked a proper signature. (Doc. No. 8).

---

[1] Defendant Metro Action Commission is also known as the Metropolitan Action Commission.

Pending before the Court are two emergency motions and a motion to dismiss. On August 21, 2025, Plaintiff filed an Emergency Motion for Preliminary Injunction to Halt Ongoing Retaliation and Constitutional Violations ("Emergency Motion 1") (Doc. No. 9). Plaintiff also filed his Emergency Motion for Preliminary Injunction ("Emergency Motion 2") (Doc. No. 11) on August 26, 2025. Defendant MAC then filed a Motion to Dismiss and Memorandum of Law in Support ("Motion to Dismiss") (Doc. No. 13) on August 29, 2025. Thereafter, Plaintiff filed a Response in Opposition to the Motion to Dismiss (Doc. No. 14) on September 2, 2025, and Defendant Metro Government filed both a Notice (Doc. No 15) and a Response in Opposition to Plaintiff's Emergency Motion 1 and Emergency Motion 2 (Doc. No 16) on September 8, 2025.

For the reasons set forth below, Defendant MAC's Motion to Dismiss (Doc. No. 13) will be granted, and, as a result, Defendant MAC will be dismissed as a party to this case. Plaintiff's Emergency Motion 1 (Doc. No. 9) and Emergency Motion 2 (Doc. No. 11) will be denied.

## I. DEFENDANT METRO ACTION COMMISSION

In Defendant MAC's Motion to Dismiss (Doc. No. 13), Defendant MAC argues that it is not an entity capable of being sued. This Court agrees.

"Pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, the capacity of a governmental corporation to be sued in federal court is governed by the law of the state in which the entity was organized." *Haines v. Metropolitan Gov't of Davidson Cnty., Tenn.*, 32 F. Supp. 2d 991, 994 (M.D. Tenn. July 17, 1998). "Political subdivisions of a state or local government have capacity only if the law creating them recognizes them as separate legal entities having capacity to sue or be sued." *Id*.

Article I, Section 1.01 of the Code of the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro Charter") specifies the various powers and rights of

Defendant Metro Government. This provision specifically states that Defendant Metro Government has the capacity to sue and be sued. *Id.*; *Haines*, 32 F. Supp. 2d at 994.

The same cannot be said for Defendant MAC. Chapter 2.108 of the Metro Charter specifies the powers and rights of Defendant MAC. However, Chapter 2.108 contains no provision stating Defendant MAC can sue or be sued. "Accordingly, Plaintiff[] may seek redress for [his] injuries but must pursue [his] cause of action against that entity with the capacity to be sued. Under Tennessee law, such capacity lies with the Metropolitan Government . . . ." *Haines*, 32 F.Supp.2d at 995. The Court agrees with MAC in that they are not a proper party to be sued in this action.

Defendant MAC's Motion to Dismiss (Doc. No. 13) will be granted, and Defendant MAC will therefore be dismissed as a party to this case.

## II. MOTION FOR PRELIMINARY INJUNCTION

Having dismissed MAC from this action, the Court now analyzes Plaintiff's Emergency Motion 1 and Emergency Motion 2 solely as to Defendant Metro Government.

A. <u>LEGAL STANDARD</u>

Persons seeking a preliminary injunction must meet four requirements.[2] They must show a likelihood of success on the merits; irreparable harm in the absence of the injunction; the balance

---

[2] Some published Sixth Circuit case law stands unmistakably for the proposition that these four items are *factors* rather than *requirements,* except that irreparable harm is a requirement (and, if it exists and thus keeps the possibility of a preliminary injunction alive, thereafter becomes a factor to be balanced along with the other three factors). *See, e.g.*, *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326-27 (6th Cir. 2019). In other words, this case law stands for the proposition that the question is not whether all four of these things exist, but rather: (i) whether irreparable harm exists, and, if so, (ii) whether, considering the existence of irreparable harm and the extent to which the other three things exist, a preliminary injunction is warranted. Alas, this case law is inconsistent with at least some more recent Sixth Circuit and Supreme Court cases (including the two cases cited above) describing these as all being requirements. The Court believes that it should follow the latter line of cases, although the outcome would be the same in this case even if the Court were to take the opposite approach and treat these four items as merely factors (except insofar as irreparable harm is *first* a requirement and, if it exists, *then* a factor).

of equities favors them; and that public interest favors an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 403 (6th Cir. 2022).

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "The party seeking the preliminary injunction bears the burden of justifying such relief, including showing irreparable harm and likelihood of success." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012).

Plaintiffs seeking a preliminary injunction may not merely rely on unsupported allegations but rather must come forward with more than "scant evidence" to substantiate their allegations. *See, e.g., Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 417 (6th Cir. 2014); *McNeilly*, 684 F.3d at 614 (upholding denial of preliminary injunction when plaintiff made only a "small showing" of evidence); *Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020) (vacating preliminary injunction when plaintiffs made no evidentiary showing on some elements of their claim, but instead relied on mere allegations); *United States v. Certain Land Situated in City of Detroit*, No. 95-1118, 1996 WL 26915, at *1 n.1 (6th Cir. 1996) (affirming denial of a preliminary injunction where the district court relied on a lack of evidence to support speculative allegations); *Boulding v. Corr. Med. Servs.*, No. 1:06-cv-811, 2008 WL 2095390, at *1 (W.D. Mich. Feb. 11, 2008), *report and recommendation adopted*, 2008 WL 2095387 (W.D. Mich. May 15, 2008) ("Plaintiff did not marshal any evidence in support of his motion [for a preliminary injunction].

---

Notably, other courts have likewise treated the four items as requirements (prerequisites), rather than as factors. *E.g., Southern Poverty Law Ctr. v. United States Dep't Homeland Sec.*, Civil Action No. 18-760 (CKK), 2020 WL 3265533, *10 (D.D.C. June 17, 2020); *Transatlantic, LLC v. Humana, Inc.*, 8:13-CV-1925-T-17TBM, 2013 WL 3958361, *1 (M.D. Fla. Aug. 1, 2013).

Plaintiff's unsupported allegations do not suffice."). The decision whether to grant a preliminary injunction is a matter within the discretion of the district court. *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009).

B. ALLEGED FACTS

Plaintiff's request for a preliminary injunction stems from alleged occurrences of retaliation, humiliation, and "systematic work obstruction," all while working for his current employer, MAC. (Doc. No. 9 at PageID# 50; Doc. No. 11 at PageID# 66-67).

Plaintiff states he is an expert in fatherhood engagement, and he created the "Father to Father" program serving over 8,000 men. (*Id*. at PageID# 49-50). According to Plaintiff, he took leave from his employment through the Family and Medical Leave Act ("FMLA") in April of 2024 to care for his wife after she suffered a serious car accident. (*Id*. at PageID# 50). Upon Plaintiff's return from leave, MAC expressed concerns about Plaintiff's professional activities that occur outside of his regular course of business. (*Id*.). Shortly thereafter, Plaintiff states MAC "implemented a punitive 'transfer' that was actually an unlawful demotion . . . ." (*Id*.).

In December 2024, Plaintiff states, MAC's Board of Commissioners made various "judicial admissions of systematic institutional discrimination . . . establish[ing] a pattern of systematic discrimination . . . and . . . institutional misconduct." (*Id*. at PageID# 50-51).

Plaintiff alleges that he was later humiliated by MAC when it distributed an agency directory containing each employee's proper title, with the entry for Plaintiff's title reading, "what is his title?" (Doc. No. 9 at PageID# 50). Plaintiff states that this directory created a hostile work environment and damaged his professional reputation. (*Id*.).

Plaintiff states MAC consistently obstructed his work on federally mandated programs from 2024 to the present by holding Father to Father program materials hostage, delaying

schedules past critical deadlines, restricting resources, and making arbitrary rule changes. (Doc. No. 9 at PageID# 50).

According to Plaintiff, MAC's retaliatory conduct is continuing and escalating since Plaintiff filed complaints with the human resources department. (Doc. No. 9 at PageID# 50). Alleged communication restrictions were implemented, and Plaintiff was directed to speak with someone other than the individual to whom he originally sent his complaints. (*Id*.). Plaintiff maintains that these communication restrictions prevent him from completing essential work. (*Id*.).

Plaintiff states he "observed and documented systematic evidence manufacturing" by MAC after hearing the special projects manager "talking loudly to the other directors about sending a spreadsheet and to document any trainings they've done in the past" on August 19, 2025. (Doc. No. 11 at PageID# 67). Plaintiff states that further escalating retaliatory conduct has occurred since he "served Defendants with a litigation hold notice" on August 22, 2025, because he was asked to undergo a retroactive performance evaluation for the previous year, long after the evaluation period had passed. (*Id*. at PageID# 66). Plaintiff believes that the evaluation was an effort by MAC to create post-litigation documentation. (*Id*. at PageID# 67). On the same day (August 22, 2025), Plaintiff received notice that Defendants filed counter-complaints against him despite Defendants never having responded to the Complaint in the instant case. (*Id*.).

On the evening of the same day (August 22, 2025), Plaintiff claims, a team-wide email was sent out within which Plaintiff's status was "deliberately changed from the 'To:' field to the 'Cc:' field . . . constituting public humiliation and professional demotion . . . ." (Doc. No. 11 at PageID# 67). Plaintiff states he fears returning to work due to the "escalating retaliatory conduct and public humiliation tactics designed to create a hostile work environment." (*Id*.).

C. ANALYSIS

Plaintiff has not shown he would suffer irreparable harm absent an injunction. "This conclusion is dispositive here because 'a district court is "well within its province" when it denies a preliminary injunction based solely on the lack of an irreparable injury.'" *Netchoice v. Skrmetti*, No. 3:24-CV-01191, 2025 WL 1710228, at *14 (M.D. Tenn. June 18, 2025) (quoting *D.T.*, 942 F.3d at 327). This remains so even if Plaintiff's claims ultimately could prove meritorious, although the Court notes that it need not and will not opine herein on whether those claims will (or likely will) prove meritorious. *See Netchoice*, 2025 WL 1710228, at *14 (denying a motion for a preliminary injunction while declining "to take any position on the merits of [the p]laintiff's claims").

Emergency Motion 1 and its attachment (Doc. Nos. 9, 9-1), as well as Emergency Motion 2 and its attachment (Doc. Nos. 11, 11-1), contain unsupported allegations and, at most, scant evidence to substantiate Plaintiff's allegations. Plaintiff fails to provide any emails, transcripts, or other forms of evidence to substantiate his claims. Plaintiff thus has not made a showing sufficient to support a finding of irreparable harm. *See Libertarian Party of Ohio*, 751 F.3d at 417; *McNeilly*, 684 F.3d at 614; *Cameron*, 815 F. App'x at 986; *United States*, 1996 WL 26915 at *1; *Boulding*, 2008 WL 2095390 at *1.

Furthermore, Plaintiff states that he is fearful of returning to work and that his projects have been affected by the actions of Defendants. (Doc. No. 9 at PageID# 50; Doc. No. 11 at PageID# 67). However, the Court cannot find on the instant record that a change in employment position, an agency directory containing an error, alleged emails with the Plaintiff addressed in the "Cc" section as opposed to the "To" section, and alleged retroactive evaluations, without more,

are actions that (even if shown by sufficient evidence at this stage) suggest Plaintiff would suffer future irreparable harm absent an injunction.

Thus, Plaintiff's Emergency Motion 1 (Doc. No. 9) and Emergency Motion 2 (Doc. No. 11) will be denied.

### III. CONCLUSION

MAC's Motion to Dismiss (Doc. No. 13) is **GRANTED**, and MAC is **DISMISSED** as a party to this case. Plaintiff's Emergency Motion 1 (Doc. No. 9) and Emergency Motion 2 (Doc. No. 11) are **DENIED**.

Given the allegations of the Complaint, Plaintiff has successfully invoked the Court's federal-question jurisdiction. Because Plaintiff paid the full civil filing fee (Doc. No. 1-1), there is no required screening of this pro se, nonprisoner Complaint, and it is Plaintiff's responsibility to ensure that Defendant Metro Government is served with a summons and a copy of the Complaint. Fed. R. Civ. P. 4(c)(1).

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of court.

Resources for pro se litigants, including instructions for how to accomplish service of process, are available free of charge on the Court's website as well as by request to the Clerk's Office so long as the privilege is not abused.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE